**ORAL ARGUMENT HAS NOT YET BEEN SCHEDULED**

---

No. 14-7063

---

# IN THE UNITED STATES COURT OF APPEALS
## FOR the DISTRICT OF COLUMBIA CIRCUIT

CHICAGO INSURANCE COMPANY,

Appellee,

v.

PAULSON & NACE, PLLC; BARRY JOHN NACE,

Appellants,

GABRIEL ASSAAD; SARAH GILBERT,

Appellees.

---

Appeal from the United States District Court for the District of Columbia
1:12-cv-02068-ABJ

---

## BRIEF OF APPELLEE

Paulette S. Sarp (#54715)
psarp@hinshawlaw.com
Hinshaw & Culbertson LLP
333 South Seventh Street
Suite 2000
Minneapolis, MN 55402
612-333-3434

David Hudgins (#32072)
dhudgins@hudginslawfirm.com
Hudgins Law Firm
515 King Street, Suite 400
Alexandria, VA  22314
703-739-3300

Attorneys for Appellee Chicago Insurance
Company

## CERTIFICATE AS TO PARTIES, RULES AND RELATED CASES

### A.     Parties and Corporate Disclosure Statement

Chicago Insurance Company ("CIC") is the only Plaintiff who appeared before the United States District court for the District of Columbia in Civil Action No. 1:12-CV-02068-ABJ.   CIC is an indirect subsidiary of Fireman's Fund Insurance Company ("FFIC").   FFIC is a wholly owned subsidiary of Allianz Global Risks US Insurance Company, a California corporation.   Allianz Global Risks US Insurance Company is a wholly owned subsidiary of Allianz of America, Inc., a Delaware corporation, which is a wholly owned subsidiary of Allianz Aktiengesellschaft (Allianz AG).   Allianz AG is a publicly held company that directly holds 10% or more of FFIC and its subsidiaries.

Defendants appearing before the district court were Paulson & Nace, PLLC; Barry J. Nace; Gabriel Assaad; and Sarah E. Gilbert.  Paulson & Nace, PLLC and Barry J. Nace (collectively the "Nace Defendants") are the only two defendants who have appealed the district court's award of summary judgment in CIC's favor.

### B.     Rulings

The Nace Defendants seek review of the April 10, 2014 Order by Judge Amy Berman Jackson of the United States District Court for the District of Columbia, granting CIC's Motion for Summary Judgment and denying the Nace Defendants' Motion for Summary Judgment.  *Chicago Insurance Company v. Paulson & Nace, PLLC*, --- F. Supp. 2d ----, 2014 WL 1392101 (D.D.C April 10,

2014).  Defendants Sarah E. Gilbert ("Gilbert") and Gabriel Assaad ("Assaad") do not appeal from the district court's order.  CIC does not appeal from any of the district court's orders.

**C.** **Related Cases**

CIC is not aware of any other related cases.

# **TABLE OF CONTENTS**

CERTIFICATE AS TO PARTIES, RULES AND RELATED CASES ................... i

TABLE OF CONTENTS........................................................................ iii

TABLE OF AUTHORITIES ................................................................... v

GLOSSARY........................................................................................ x

JURISDICTIONAL STATEMENT ......................................................... 1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............................ 2

STATEMENT OF FACTS ..................................................................... 3

SUMMARY OF ARGUMENT ................................................................ 13

STANDARD OF REVIEW .................................................................... 18

ARGUMENT ..................................................................................... 18

I.     DISTRICT OF COLUMBIA LAW AND NOT VIRGINIA LAW
       APPLIES TO DETERMINE COVERAGE. ................................................ 18

       A.     Virginia Code § 38.2-2226 does not apply because it is
              procedural. ....................................................................... 18

       B.     The choice of law principles applied in insurance coverage
              disputes require that the District's substantive law be applied............ 19

       C.     Even if Virginia law applies, § 38.2-2226 does not provide the
              Nace Defendants relief. ....................................................... 26

              1.     The Nace Defendants have no standing to seek protection
                     under § 38.2-2226. ..................................................... 26

              2.     Virginia Code § 38.2-2226 does not apply to CIC's "prior
                     knowledge" coverage defense.................................... 29

II.     THERE IS NO COVERAGE FOR GILBERT'S LAWSUIT
        BECAUSE THE "NO PRIOR KNOWLEDGE" REQUIREMENT IN
        THE POLICY'S INSURING AGREEMENT HAS NOT BEEN MET. .......34

        A.    The Nace Defendants have the burden of proving that the
              requirements for coverage in the insuring agreement have been
              met. ................................................................................................34

        B.    Prior to inception of the CIC policy, the Nace Defendants had a
              reasonable basis to believe that they breached a professional
              duty. ...............................................................................................35

        C.    CIC is not required to provide expert testimony in order to
              prevail on its coverage defense. ....................................................44

III.    THE NACE DEFENDANTS' COMMON LAW WAIVER
        ARGUMENT FAILS AS A MATTER OF LAW. .......................................48

CONCLUSION ...................................................................................................55

REQUEST FOR ORAL ARGUMENT .................................................................55

CERTIFICATE OF COMPLIANCE....................................................................57

CERTIFICATE OF SERVICE ............................................................................58

## TABLE OF AUTHORITIES

**Cases**                                                             **Page(s)**

*Adolph Coors Co. v. Truck Ins. Exch.*,
  960 A.2d 617 (App. D.C. 2008) ...................................................................21, 22

*Ass'n of Merger Dealers, LLC v. Tosco Corp.*,
  167 F.Supp.2d 65 (D.D.C. 2001)........................................................................18

*Associated Third Class Mail Users v. U.S. Postal Service*,
  662 F.2d 767, 213 U.S. App. D.C. 252 (C.A.D.C. 1980)...................................26

*Athridge v. Aetna*,
  510 F. Supp. 2d 1, 8 (D.D.C. 2007)....................................................................54

*In re Belmar*,
  319 B.R. 748 (Bankr. D.D.C. 2004) ...................................................................38

*Berry v. State Farm Mut. Auto. Ins. Co.*,
  340 F. Supp. 228 (D. Va. 1972).........................................................................31

*Blackhurst v. Johnson*
  72 F.2d 644 (8th Cir. 1934) ...............................................................................26

*Bryan Bros. Inc. v. Continental Cas. Co.*,
  660 F.3d 827 (4th Cir. 2011) ...............................................................39, 40, 44

*Cameron v. Washington Metro. Area Transit Auth.*,
  649 A.2d 291 (D.C. 1994) ..................................................................................39

*Capitol Specialty Ins. Corp. v. Sanford Wittels & Heisler, LLP*,
  793 F. Supp. 2d 399 (D.D.C. 2011)....... 23, 24, 34, 35, 36, 37, 38, 39, 44, 53, 54

*Cheatham v. NGM Ins. Co.*,
  2013 WL 509049 (E.D. Va. Feb. 11, 2013) ......................................................31

*Chicago Ins. Co. v. Paulson & Nace, PLLC*,
  --- F. Supp. 2d ----, 2014 WL 1392101 .............................................................22

\* Authorities upon which CIC chiefly relies are marked with asterisks.

*Cincinnati Ins. Co. v. All Plumbing, Inc. Serv., Parts Installation*,
2013 WL 5665195 (D.D.C. Oct. 18, 2013) .........................................................50

*Council For Responsible Nutrition v. Hartford Cas. Ins. Co.*,
2007 WL 2020093 (D.D.C. July 12, 2007) ...............................................34, 46

*In re: Cutty's Gurnee, Inc.*,
133 B.R. 934 (Bankr. N.D. Ill. 1991) .................................................................51

*Darwin Nat. Assur. Co. v. Hellyer*,
2011 WL 2259801 (N.D. Ill. June 7, 2011).......................................................45

*Diamond Service Co., Inc. v. Utica Mut. Ins. Co.*,
476 A.2d 648 (App. D.C. 1984) ..........................................................49, 54, 55

*Dorothy K. Winston & Co. v. Town Heights Dev., Inc.*,
376 F. Supp. 1214 (D.D.C. 1974)......................................................................22

*Eli Lilly and Co. v. Home Ins. Co.*,
653 F. Supp. 1 (D.D.C. 1984)..................................................................19, 23

*Erie R. Co. v. Tompkins*,
304 U.S. 64, 78, 58 S.Ct. 817, 822 (1938) ......................................................18

*Evans v. Med. Inter-Ins. Exchange*,
856 A.2d 609 (D.C. 2004) .................................................................................34

*Fed. Ins. Co. v. Nationwide Mutual Ins. Co.*,
448 F. Supp. 723 (W.D.Va.1978)......................................................................18

*General Ins. Co. of America v. Boyd*,
2002 WL 1610948 (S.D. Ind. July 9, 2002) ......................................................41

*Gordon v. Liberty Mut. Ins. Co.*,
675 F. Supp. 321 (E.D. Va. 1987) ..............................................................32, 33

*Great American Ins. Co. v. Gross*,
2008 WL 376263 (E.D. Va. Feb. 11, 2008) ...............................................27, 28

*Grimes v. District of Columbia*,
836 F.2d 647, 266 U.S. App. D.C. 483 (C.A.D.C. 1988)..................................27

*Hart Construction Co. v. Am. Fam. Mut. Ins. Co.*,
  514 N.W.2d 384 (N.D. 1994) ...........................................................30

*Home Ins. Co. v. Powell*,
  1997 WL 370109 (E.D. Pa. June 13, 1997).......................................45

*Koransky, Bouwer & Poracky, P.C. v. Bar Plan Mut. Ins. Co.*,
  712 F.3d 336 (7th Cir. 2013) ......................................................40, 44

*Lewis v. St. Paul Fire and Marine Ins. Co.*,
  452 N.W.2d 386 (Iowa 1990) ..........................................................41

*Liberty Mut. Ins. Co. v. Safeco Ins. Co. of America*,
  288 S.E.2d 469 (Va. 1982) ..............................................................33

*Maxey v. Doe*,
  225 S.E.2d 359 (Va. 1976) ..........................................................27, 28

*McArthur v. State Farm Mut. Inc. Co.*,
  274 P.3d 981 (Utah 2012)................................................................30

*McVicker v. Travelers Ins. Co.*,
  785 A.2d 550 (R.I. 2001).................................................................30

*Medhin v. Hailu*,
  26 A.2d 307 (App. D.C. 2011) .....................................................30, 31

*MHM Services, Inc. v. Assurance Co. of Am.*,
  975 N.E.2d 1139 (Ill. Ct. App. 2012) ...............................................18

*U.S. ex rel. Mossey v. Pal-Tech, Inc.*,
  231 F. Supp. 2d 94 (D.D.C. 2002)....................................................45

*Mt. Airy Ins. Co. v. Thomas*,
  954 F. Supp. 1073 (W.D. Pa. 1997)..................................................42

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Aetna Cas. & Sur. Co.*,
  384 F.2d 316, 318 (D.C. Cir. 1967)..................................................50

*O'Neil v. Bergan*,
  452 A.2d 337 (D.C. 1982) ...............................................................39

*Parrish v. District of Columbia*,
 718 A.2d 133 (D.C. 1998) ...................................................................8

*Potomac Elec. Power Co. v. California Union Ins. Co.*,
 777 F. Supp. 968 (D.D.C. 1991)...................................................20, 21

*Reynolds Spring Co. v. L.A. Young Industries*,
 101 F.2d 257 (6th Cir. 1939) ............................................................26

*\*Ross v. Continental Cas. Co.*,
 420 B.R. 43 (D.D.C. 2009)......................................................39, 41, 44

*Stern v. Drew*,
 285 F. 925 (D.C. 1922)......................................................................22

*U.S. v. $304,980.00 in U.S. Currency*,
 732 F.3d 812 (7th Cir. 2013) ............................................................26

*United States v. Regenerative Scis., LLC*,
 741 F.3d 1314 (D.C. Cir. 2014).........................................................18

*Vermont Mut. Ins. Co. v. Everette*,
 875 F. Supp. 1181 (E.D. Va. 1995) ..................................................28

*Westport Ins. Corp. v. Lilley*,
 292 F. Supp. 2d 165 (D. Me. 2003)...................................................45

*Wheeling Pittsburgh Corp. v. Am. Ins. Co.*,
 2003 WL 23652106 (W. Va. Cir. Ct. Oct. 18, 2003) ........................30

*\*Wittner, Poger, Rosenblum & Spewak, P.C. v. Bar Plan Mut. Ins. Co.*,
 969 S.W.2d 749 (Mo. 1998) ..............................................................41

*\*Worth v. Tamarack Am., a Div. of Great Am. Ins. Co.*,
 47 F. Supp. 2d 1087 (S.D. Ind. 1999), *aff'd* 2000 WL 101227 (7th
 Cir. Jan. 26, 2000).....................................................................41, 44

*Zuckerman Spaeder, LLP v. Auffenberg*,
 646 F.3d 919,922 (App. D.C. 2011)..................................................49

**Statutes**

Virginia Code § 8.01-8..............................................................14, 35, 47

Virginia Code § 38.1–389.1 .....................................................................18

Virginia Code § 38.2-2226 ......... 2, 16, 17, 18, 19, 25, 26, 27, 28, 29, 31, 32, 33, 34

**Rules**

Fed. R. App. P. 34(a) ...............................................................................55

Federal Rule of Evidence 702.................................................................45

**Other Authorities**

*Corbin on Contracts*, § 30.13 (Rev. ed. 1999) ........................................31

*Restatement (Second) of Contracts*, § 225 (1981) ..................................31

# <u>GLOSSARY</u>

"PSOF" means the Statement of Material Facts in Support of Chicago Insurance Company's Motion for Summary Judgment filed September 9, 2013.

"PASOF" means Plaintiff Chicago Insurance Company's Response in Opposition to The Nace Defendants' Statement of Material Facts Not in Dispute and Plaintiff's Additional Statement of Undisputed Material Facts in Support of Plaintiff's Opposition filed December 12, 2013.

## JURISDICTIONAL STATEMENT

With one exception, CIC agrees with the Nace Defendants' jurisdictional statement. The Nace Defendants incorrectly state that Barry J. Nace, the sole member of Paulson & Nace, PLLC, is a citizen of Maryland. The Nace Defendants do not cite to the record anywhere in their Brief to support this statement. The evidence in this matter actually confirms that Mr. Nace resides in the District. The Nace Defendants admitted in their Answer that Paulson & Nace, PLLC is a limited liability company organized under the laws of the District with its principal place of business in the District and that Barry Nace, the sole member of Paulson & Nace, PLLC, is a resident and citizen of the District. (Complaint, ¶¶ 2, 4; Answer, ¶¶ 2, 4). These facts are relevant to CIC's position that the district court correctly applied the law of the District to determine coverage under the CIC policy.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.     Did the district court correctly determine that the law of the District of Columbia, and not Virginia (and in particular Virginia Code §38.2-2226), applies to determine whether coverage exists under a professional liability policy which was negotiated and issued in the District to a law firm which has its principal place of business in the District?

2.     Did the district court correctly determine that CIC has no obligation to provide coverage for the legal malpractice lawsuit filed by Gilbert because prior to CIC issuing its policy on July 24, 2007, the Nace Defendants had a reasonable basis to believe that a professional duty had been breached or that a claim might be brought against them by Gilbert?

3.     Did the district court correctly reject the Nace Defendants' attempt to create coverage where none exists by arguing that CIC waived its right to assert its "prior knowledge" coverage defense?

## <u>STATEMENT OF FACTS</u>

### <u>The underlying legal malpractice lawsuit and the professional error upon which it is based.</u>

On March 19, 2012, Gilbert filed a legal malpractice lawsuit against the Nace Defendants and Assaad in the Circuit Court of the City of Richmond (the "Gilbert Lawsuit").  (Plaintiff's Statement of Additional Material Facts in Support of its Response to the Nace Defendants' Motion for Summary Judgment ("PASOF"), p. 10, ¶ 1).  The Gilbert Lawsuit alleged professional negligence against the Nace Defendants and Assaad arising out of their representation of Gilbert in two medical malpractice lawsuits.  (PASOF, p. 10, ¶ 2; Statement of Material Facts in Support of Plaintiff's Motion for Summary Judgment ("PSOF"), Exh. A).

The Gilbert Lawsuit alleges that on July 28, 2004 Gilbert underwent spinal fusion surgery to correct her scoliosis and, as a result, was rendered a paraplegic.  (PASOF, p. 11, ¶ 3).  In December 2004, Gilbert's parents retained the Nace Defendants to pursue a medical malpractice claim.  (PASOF, p. 11, ¶ 4).  On July 24, 2006, just four days before the statute of limitations expired, the Nace Defendants finally filed a medical malpractice lawsuit in Virginia (the "first medical malpractice lawsuit").  (PASOF, p. 11, ¶¶ 5, 6, PSOF, Exh. B).  The complaint named Gilbert's parents "on behalf of their daughter."  (*Id.*).

3

The defendants in the first medical malpractice lawsuit immediately filed motions to dismiss on the ground that the case was filed in the name of the wrong party because, under Virginia law, a parent cannot sue on behalf of a child; rather, the child must bring the suit and the parents are to be named in the suit as "next friends." (PASOF, p. 11, ¶ 7; PSOF, Exh. D). On October 25, 2006 – three months after the statute of limitations on Gilbert's claim had expired – the Nace Defendants filed a second lawsuit identifying her parents as "next friends" (the "second medical malpractice lawsuit"). (PASOF, p. 11, ¶ 8, PSOF, Exh. D). The purpose in filing the second complaint was to try to correct the mistake in the first complaint. (PASOF, ¶ 9, pp. 11-12; PASOF, Exh. Z).

During oral argument on the motion to dismiss the first medical malpractice lawsuit on January 4, 2007, Assaad, who was an associate/employee of the Nace Defendants, stated as follows:

> I do agree the action took place – or the negligence took place on July 28th, 2004, and, therefore, the statute of limitations would be on that date, would be July 28th, 2006. … I feel at this point, to dismiss the child's claim with prejudice would be inappropriate. <u>I agree we haven't filed the claim appropriately with regard to the claim at issue at this point in time</u> and therefore –.

(PASOF, p. 12, ¶¶ 10, 11; PASOF, Exh. Z; PSOF, Exh. E) (emphasis added). On February 26, 2007, the court dismissed the first medical malpractice lawsuit

without prejudice because it had been filed in the name of the wrong party. (PASOF, p. 12, ¶ 12; PSOF, Exhs. A, F).[1]

The defendants also filed motions to dismiss in the second malpractice lawsuit on the grounds that the statute of limitations expired before this lawsuit was filed. (PASOF, p. 12, ¶ 13; PASOF, Exh. Z; PSOF, Exh. G). At oral argument on June 18, 2007, the Virginia court ruled that it was granting the motions to dismiss with prejudice. (PASOF, pp. 12-13, ¶ 14). The Nace Defendants wrongly state without citation to the record that the court merely "suggested" that the second lawsuit would be dismissed. On the contrary, the hearing transcript confirms that the court ruled from the bench during the hearing that the lawsuit would be dismissed. (PSOF, Exh. G, pp. 31-32, 44). The parties

---

[1] The Nace Defendants criticize CIC for stating in its opening Motion filed with the district court that this dismissal was with prejudice. (Brief, n. 2). However, in their Petition for Appeal in the underlying lawsuits, the Nace Defendants represented that on January 4, 2007 the Virginia trial court "granted [the defendants'] Motion to Dismiss Sarah Gilbert's claim with prejudice and Richard and Rose Lee Gilbert's claims without prejudice and with leave to amend." (Nace Defendants' Statement of Material Facts Not in Dispute, Exh. 9 at CIC000238). This statement, coupled with the fact that the copy of the Order of Dismissal includes "with prejudice" language that is apparently stricken but does not include any initials next to this handwritten change certainly created some question as to whether the first dismissal was with or without prejudice. More saliently, however, CIC's coverage position does not depend upon this dismissal being with prejudice. It is the fact that the first complaint was dismissed for failing to comply with Virginia statutory requirements (with or without prejudice), coupled with the Nace Defendants' filing of a second complaint after the statute of limitations had run in an attempt to fix the first error, which was then dismissed with prejudice that establishes the Nace Defendants' "prior knowledge" as a matter of law.

were advised at the hearing to submit a proposed order to this effect, which was entered on August 3, 2007, thereby confirming the dismissal with prejudice. (PASOF, p. 13, ¶ 15; PSOF, Exh. H).

### The CIC policy.

On July 18, 2007 – just one month after the Virginia court dismissed from the bench the second medical malpractice lawsuit – Mr. Nace submitted an application for professional liability insurance to CIC.  (PASOF, p. 13, ¶ 16; PSOF, Exh. J).  In the application, Mr. Nace answered "No" to the following question: Having inquired of all partners, officers, owners and employed lawyers, are there any circumstances which may result in a claim being made against the firm, its predecessors or any current or past partner, officer, owner or employed lawyer of the firm?"  (PASOF, p. 13, ¶ 17; PSOF, Exh. J).

CIC issued a "claims made and reported" Lawyers Professional Liability Policy to "Barry J. Nace dba Paulson & Nace" for the policy period July 24, 2007 to July 24, 2008 ("the 2007-2008 policy").  (PASOF, p. 13, ¶ 18; PSOF, Exh. K). The coverage was renewed for the policy period July 24, 2008 to July 24, 2009 ("the 2008-2009 policy").  (PASOF, p. 13, ¶ 19; PSOF, Exh. L).  The insuring agreements for both policies provide as follows:

     I.    COVERAGE

> The Company will pay on behalf of the **Insured** all sums which the **Insured** shall become legally obligated to pay as **Damages**

6

for **Claims** first made against the **Insured** and reported to the Company during the **Policy Period** or Extended Reporting Period, as applicable, arising out of any negligent act, error, omission or **Personal Injury** in the rendering of or failure to render **Professional Services** for others by an **Insured** covered under this policy. <u>Provided always that such **Professional Services** or **Personal Injury** happen:</u>

A.      during the **Policy Period**; or

B.      <u>prior to the **Policy Period** provided that prior to the effective date of the first Lawyers Professional Liability Insurance Policy issued by this Company to the **Named Insured** or **Predecessor in Business,** and continuously renewed and maintained in effect to the inception of this policy period:</u>

    1.      the **Insured** did not give notice to any prior insurer of any such act, error, omission or **Personal Injury**;

    2.      <u>the **Named Insured**, any partner, shareholder, employee, or where appropriate the **Named Insured's** management committee or any member thereof, had no reasonable basis to believe that the **Insured** had breached a professional duty or to **Reasonably Foresee** that a **Claim** would be made against the **Insured**;</u> and

    3.      there is no prior policy or policies which provide insurance (including any Automatic or Optional Extended Reporting Period or similar provision) of such policies for such **Claim**, unless the available limits of liability of such prior policy or policies are insufficient to pay any **Claim**, in which event this policy will be specific excess over any such prior coverage, subject to this policy's terms, limits of liability, exclusions and conditions.

(PASOF, p. 18-19, ¶ 45; PSOF, Exhs. K, L) (emphasis added).  Pursuant to Paragraph II.B.2, there is coverage only for claims arising out of professional services rendered before the policy was issued if, before CIC issued its first policy, the insured had no reasonable basis to believe a professional duty had been breached *or* to reasonably foresee a claim would be made against it.  Because this provision is worded in the alternative, there is no coverage if either one of these requirements is not satisfied.  *See Parrish v. District of Columbia*, 718 A.2d 133, 135-36 (D.C. 1998) (the word "or" is "normally disjunctive and establishes a relationship of contrast" and when used to join alternatives, "indicates that they are mutually exclusive").

The policy defines the term "reasonably foresee" as follows:

**Reasonably Foresee(n)** means:

1.    **Claims** or incidents reported to any prior insurer;

2.    unreported **Claims** or suits of which any **Insured** had received notice prior to the effective date of the first policy with the Company;

3.    incidents or circumstances that involve a particular person or entity which an **Insured** knew might result in a **Claim** or suit prior to the effective date of the first policy issued by the Company to the **Named Insured**, and which was not disclosed to the Company.

(PASOF, p. 19, ¶¶ 46, 47).

8

## Notice of Ms. Gilbert's potential claim to CIC.

In May of 2009, Mr. Nace submitted a "Supplemental Claim/Incident Information" form to CIC identifying Gilbert as a potential claimant. (PASOF, p. 14, ¶¶ 20, 21; PSOF, Exh. M). Mr. Nace represented that "no claim or suit has been filed" and that the date of the "alleged error" in the handling of Gilbert's claim was 2008. (*Id.*). However, as CIC later discovered during its investigation of Gilbert's potential claim, the date of the "alleged error" was not 2008, but 2006 and 2007 -- before CIC issued its first policy. (PASOF, p. 17, ¶¶ 38, 39). Mr. Nace later acknowledged in an application for professional liability insurance he submitted to Lloyds of London in 2011 that the true "date of alleged error" for Gilbert's claim was "7/24/06 – Date of [the] Original Complaint" filed by the Nace Defendants. (PASOF, p. 14, ¶ 22; PSOF, Exh. N).

In July 2009, CIC issued a letter to the Nace Defendants acknowledging receipt of the potential claim, requesting the underlying file, and advising that it would investigate the potential claim under a general reservation of rights pending the outcome of the appeals that had been filed. (PASOF, p. 14, ¶ 24; PSOF, Exh. O). CIC was not aware of any specific facts giving rise to any coverage defenses in July 2009. (PASOF, p. 15, ¶ 25; PASOF, Exh. CC). The purpose of the July 2009 letter was simply to acknowledge receipt of the potential claim and advise that CIC reserved the right to raise coverage defenses if and when CIC became

aware of a coverage defense. (PASOF, p. 15, ¶ 26). CIC's acknowledgement letter included specific language that CIC was not waiving any potential rights or defenses and that it reserved the right to assert coverage defenses at such time as facts become known to CIC. (PASOF, p. 15, ¶ 27).

Mr. Nace does not recall anyone at CIC ever affirmatively advising him that CIC would provide unconditional coverage for any lawsuit that might be asserted by Gilbert. (PASOF, p. 15, ¶ 29; PASOF, Exh. Z). Rather, Mr. Nace just "assumed there would be coverage" because he "paid [his] money and [he] expected to be covered." (PASOF, p. 16, ¶ 30; PASOF, Exh. Z).

On approximately September 30, 2010, CIC retained attorney Deborah Whelihan (the Jordan Coyne law firm) to represent the Nace Defendants in connection with Gilbert's potential claim. (PASOF, p. 16, ¶ 31; PASOF, Exh. Y). The Nace Defendants had utilized Ms. Whelihan as counsel in other matters and considered her to be "their attorney." (PASOF, p. 16, ¶ 32; Nace Defendants' Statement of Material Facts Not in Dispute, Exh. 4). Per CIC's claim notes, Ms. Whelihan advised CIC on September 30, 2010 that she "still awaits pertinent documents from the insured in order to make an assessment of the total exposure in the case" and that "[s]he will be following up w/insured shortly." (PASOF, p. 16, ¶ 33; PASOF, Exh. Y).

The Nace Defendants continued to represent Gilbert until January 28, 2011, when attorney H. Aubrey Ford, III advised the Nace Defendants that he had been retained to represent Gilbert in the medical malpractice lawsuit.  (PASOF, p. 16, ¶ 34; PASOF, Exh. AA).  However, Mr. Ford did not assert a claim against the Nace Defendants on Ms. Gilbert's behalf at that time.  (PASOF, p. 16, ¶ 35; PSOF, Exh. AA).

The Nace Defendants' attorney, Ms. Whelihan, advised CIC on October 20, 2011 that she had recently received file documents from the insured and would send them to CIC.  (PASOF, p. 17, ¶ 37; PSOF, Exh. Y).  CIC received these documents on approximately November 21, 2011.  (PASOF, p. 17, ¶ 38; PASOF, Exh. Y).

CIC reviewed these documents on approximately November 29, 2011 and for the first time discovered that the date of the alleged error giving rise to Gilbert's potential claim took place prior to CIC's issuance of its first policy on July 24, 2007.  (PASOF, p. 17, ¶¶ 39, 41).  Prior to November 29, 2011, CIC had relied on the Nace Defendants' representation in the report of potential claim that the "alleged error" took place in 2008, which was after CIC issued its first policy. (PASOF, p. 17, ¶ 40).

On January 13, 2012, CIC advised the Nace Defendants that there may be no coverage for Gilbert's potential claim on the grounds that the requirement for

11

coverage in the policy's insuring agreement that the insureds have no reasonable basis to believe a professional duty had been breached or a claim might be made prior to the inception of the first policy by CIC had not been satisfied. (PASOF, p. 18, ¶ 43; PSOF, Exh Q). CIC advised that it would "continue to monitor and investigate this potential claim under a strict reservation of rights". (*Id.*).

**Gilbert's lawsuit.**

On March 19, 2012, attorney Ford filed the Gilbert Lawsuit. (PASOF, p. 20, ¶ 52; PSOF, Exh. R). It is undisputed that Gilbert did not assert an actual claim against the Nace Defendants until she filed her legal malpractice lawsuit on March 19, 2012. (PASOF, p. 21, ¶ 53; PSOF, Exh. Z).

On April 12, 2012, CIC received notice of the Gilbert Lawsuit. (PASOF, p. 21, ¶ 54; PSOF, Exh. S). CIC immediately issued reservation of rights letters to the Nace Defendants advising that CIC would defend them subject to a reservation of rights to deny coverage and to bring a declaratory judgment action seeking a declaration of no coverage for the Gilbert Lawsuit based upon the "no prior knowledge" requirement not being satisfied. (PASOF, p. 21, ¶ 55; PSOF, Exh. T). After discussions between CIC, Mr. Nace and Ms. Whelihan, CIC retained attorney John Easton (of the Jordan Coyne firm) to defend the Nace Defendants in the Gilbert Lawsuit. (PASOF, p. 21, ¶ 57; PASOF, Exhs. Z, BB).

12

The Nace Defendants allege in their Brief (p. 30) that had CIC notified them of their coverage defense sooner, they would have retained "independent counsel" and the fact that they did not do so caused them prejudice. Mr. Nace's own deposition testimony, however, confirms that the Nace Defendants never objected to Mr. Easton serving as their defense counsel and that they never requested that CIC appoint different defense counsel. (PASOF, p. 21, ¶¶ 57-58; PASOF, Exhs. Z, BB). In addition, Mr. Nace acknowledged in his deposition that the timing of CIC's reservation of rights letters did not prejudice them in any manner in their actual defense of the Gilbert Lawsuit. (PASOF, p. 25, ¶ 77; PASOF, Exh. Z).

It also is undisputed that despite having received CIC's reservation of rights letter in January 2012, before Gilbert filed her lawsuit, the Nace Defendants still did not hire their own coverage counsel or file a declaratory judgment action. (PASOF, p. 25, ¶ 73, 74; PASOF, Exh. Z). In fact, they did not retain coverage counsel until after CIC filed its declaratory judgment action in September 2012. (*Id.*)

## SUMMARY OF ARGUMENT

The issue is whether or not the Nace Defendants are entitled to coverage under a professional liability policy issued by CIC on July 24, 2007 for the legal malpractice lawsuit filed by Gilbert. In order for coverage to exist, the Nace Defendants must prove that all requirements for coverage in the policy's insuring

agreement have been met.  One of these requirements is that "prior to the effective date of the first … Policy issued by [CIC] to the Named Insured … the Named Insured, … [or any] employee … had no reasonable basis to believe that the Insured had breached a professional duty …"  This test is an objective one.   The district court correctly determined as a matter of law that the Nace Defendants cannot meet this burden.

The undisputed facts establish that prior to July 24, 2007 two separate medical malpractice lawsuits filed by the Nace Defendants on behalf of Gilbert had been dismissed.   The first lawsuit was filed four days before the statute of limitations expired and was dismissed on February 26, 2007 for failure to comply with a Virginia statute governing who must bring a lawsuit on a minor's behalf, Virginia Code § 8.01-8.  The Nace Defendants concede that they filed a second lawsuit on October 25, 2006 *in order to remedy the mistake in the first lawsuit,* and that the second lawsuit was filed three months after the statute of limitations expired.  The transcript from the hearing conducted on June 18, 2007 confirms that the Virginia court advised the parties during this hearing that it was granting defendants' motion to dismiss the second lawsuit with prejudice based upon the Nace Defendants' failure to file this lawsuit within the statute of limitations.  These events all took place before Mr. Nace submitted his application for insurance to CIC and before CIC issued its first policy on July 24, 2007.

14

An objective lawyer with knowledge of these facts would have a reasonable basis to believe a professional error had been committed or that a claim might be made. Indeed, courts in the District of Columbia and other jurisdictions consistently hold as a matter of law that a reasonable attorney would know an error had been committed or a claim might be made under similar circumstances. The Nace Defendants' claim that they subjectively believed (or hoped) that their error was a mere "technicality" that could be remedied on appeal is therefore irrelevant because the test is objective.

The Nace Defendants also argue without citation to any relevant authority that CIC is required to provide expert testimony to support its coverage position. Instead, they cite to case law holding that a plaintiff in a legal malpractice case is required to submit expert testimony to prove malpractice has occurred. This, of course, is not the issue in this case. The law in the District is clear that when the issue is whether or not a "prior knowledge" requirement for coverage has been satisfied based on facts similar to those here, the court can and should conclude as a matter of law that the insured had reason to believe an error has been committed without the need for any expert testimony.

Moreover, even if expert testimony were required, which it is not, it is the Nace Defendants' burden to present such evidence because they have the burden in proving that the insuring agreement has been satisfied. The Nace Defendants have

15

presented no such expert testimony, only the protestations of Mr. Nace himself who, as a party to this litigation certainly, does not qualify as an independent expert witness.   In addition, Mr. Nace testified in deposition that when he eventually consulted with a Virginia lawyer to determine whether the court's dismissal based on the Virginia statute would be upheld by an appellate court, this lawyer confirmed that it would.  The Nace Defendants cannot credibly argue that no reasonable lawyer would understand that failure to comply with the Virginia statute and the resulting dismissal of two lawsuits was a professional error.

The Nace Defendants next argue that this Court should ignore the plain terms of the CIC policy and, instead, apply Virginia Code §38.2-2226 to bar CIC from asserting its coverage defense.  This argument misses the mark for several reasons, not the least of which is that it is the law of the District of Columbia and not Virginia that applies to determine CIC's coverage obligations.  The choice of law factors considered by courts in insurance coverage cases overwhelmingly support application of the District's law.  The Nace Defendants are citizens and residents of the District, the policy was negotiated and delivered in the District, and the District is the principal location of the Nace Defendants' law practice.  The fact that the specific act of malpractice for which the Nace defendants' seek coverage took place in Virginia may be relevant to which state's law applied to the merits of

16

Gilbert's malpractice claim, but it is not the controlling factor in this coverage action.

Even if Virginia law applies, the Nace Defendants have no standing to seek protection under Virginia Code § 38.2-2226, which requires an insurer to send a copy of its reservation of rights letter to the claimant in limited situations. Virginia law is clear that this statute has no effect upon the contractual relations between and insurer and its insured. Section 38.2-2226 can only apply if Gilbert establishes that she was prejudiced by not receiving CIC's reservation of rights letter. But Gilbert did not appeal the entry of summary judgment in CIC's favor and she is not claiming prejudice.

Finally, the Nace Defendants mistakenly argue under common law principles that CIC has waived its right to assert the "prior knowledge" coverage defense because it did not issue a reservation of right until January 2012 even though the Nace Defendants reported Gilbert's potential claim in May 2009. What the Nace Defendants omit from their analysis is that when Mr. Nace reported the potential claim in May 2009 he advised CIC that the professional error took place in 2008, which is after the CIC policy incepted and which, if true, would not have implicated the "prior knowledge" requirement.

CIC relied on Mr. Nace's misrepresentation initially investigating and monitoring Gilbert's claim without a reservation. When CIC discovered the true

fact – that the errors took place in 2006 and 2007 before the policy was issued – it immediately issued a reservation of rights.  Even then, this reservation of rights was issued approximately two months before Gilbert even filed her lawsuit against the Nace Defendants.  The district court correctly applied D.C. law in holding that CIC did not waive its coverage defense under these circumstances, particularly since there is no evidence that the Nace Defendants sustained any actual prejudice as a result of the timing of CIC's reservation of rights.

## STANDARD OF REVIEW

This Court reviews the district court's grant of summary judgment de novo. *See United States v. Regenerative Scis., LLC*, 741 F.3d 1314, 1318 (D.C. Cir. 2014).

## ARGUMENT

## I.     DISTRICT OF COLUMBIA LAW AND NOT VIRGINIA LAW APPLIES TO DETERMINE COVERAGE.

### A.     Virginia Code § 38.2-2226 does not apply because it is procedural.

A federal court exercising diversity jurisdiction does not apply a state's procedural law. *Ass'n of Merger Dealers, LLC v. Tosco Corp.*, 167 F.Supp.2d 65, 72-73 (D.D.C. 2001) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822 (1938)) (federal courts apply federal procedural law and state substantive law in diversity cases).  Virginia courts have held that § 38.2-2226 is procedural in nature.  *Fed. Ins. Co. v. Nationwide Mutual Ins. Co.*, 448 F. Supp. 723, 725

18

(W.D.Va.1978) (holding that Virginia Code § 38.1–389.1 (predecessor to § 38.2-2226) is "clearly procedural"). *See also MHM Services, Inc. v. Assurance Co. of Am.*, 975 N.E.2d 1139, 1163-1164 (Ill. Ct. App. 2012) (concluding in a diversity action that Virginia Code § 38.2–2226 was "irrelevant" because it "is a procedural law and another state's procedural laws are not controlling in this case").

Simply put, this Court cannot apply § 38.2-2226 because the Virginia courts themselves have held that this statute is procedural in nature and not substantive. However, even if § 38.2-2226 somehow could be characterized as substantive, which it is not, this statute still does not apply because the substantive law of the District, and not Virginia, applies to determine coverage.

## B. The choice of law principles applied in insurance coverage disputes require that the District's substantive law be applied.

This is a coverage action in which this Court must interpret and apply the terms of an insurance policy. Nonetheless, the Nace Defendants' entire choice of law analysis is premised on the faulty argument that which law applies "does not hinge on the choice of law that will govern the CIC insurance contract. Rather, the question is the choice of law that should govern the claims litigated in the underlying legal malpractice action." (Brief, p. 11). This is directly contrary to D.C. law. Although the place where a tort occurred (here, the Nace Defendants' alleged malpractice) may be significant in determining which state's law applies to resolve the merits of that tort claim, this is not the test used by D.C. courts in

determining whether or not insurance coverage exists for that tort. Rather, "in cases of insurance, a court will look at the following factors to determine which law will apply: 1) the residence of the insured, 2) the place where the application was completed, 3) the places where the policy was negotiated, consummated, and delivered, and 4) the situs of the insured risk." *Eli Lilly and Co. v. Home Ins. Co.*, 653 F. Supp. 1, 7 (D.D.C. 1984) (applying these factors as part of the "more substantial interest" test).

For example, in *Potomac Elec. Power Co. v. California Union Ins. Co.*, 777 F. Supp. 968 (D.D.C. 1991), the court applied this test to determine which state's law applied to resolve *coverage* in an action filed by an insured seeking coverage for payments the insured made to resolve environmental damage claims. *Id.* at 972-974. The insured, a large electric utility company primarily serving D.C. and Maryland, argued that D.C. law applied because D.C. was its headquarters and principal place of business. *Id.* at 971. The insurer argued that Maryland law applied because that is where the pollution damage occurred and because Maryland was the largest source of revenue of the three jurisdictions in which the insured operated. *Id.*

The D.C. court held that simply because the damage occurred in Maryland did not weigh in favor of Maryland law applying because it was equally possible that environmental damage could have occurred in the other states where the

20

insured operated.  *Id.*  at 972.  The court held that "the most reasonable course" in

an insurance coverage dispute was to choose the insured's headquarters "as the

location with the most substantial interest in the controversy."  *Id.* at 973.

According to the court, "[a]nother reason for choosing the headquarters of the

insured as the source of law is that this is the location which appears to be most

likely contemplated by the parties":

> [C]ommon sense suggests that, knowing of the potential for claims in
> any number of states … the parties would consider the insured's
> principal headquarters as the one jurisdiction which ties all potential
> parties together.  [citation omitted]

> This view is consistent with that of the Restatement (Second) of
> Conflict of Laws which states that for a liability insurance contract the
> local law of state which the parties understood to be the principal
> location of the insured risk during the term of the policy [will be the
> source of law for the policy] unless with respect to the particulate
> issue, some other state has a more significant relationship.

*Id.*

In another coverage action, the D.C. Court of Appeals held that the law of

the state where the insured was headquartered determined whether the insurer was

obligated to provide coverage for several lawsuits against the insured, one of which

was filed in D.C.  *See Adolph Coors Co. v. Truck Ins. Exch.*, 960 A.2d 617 (App.

D.C. 2008).  There, the insured's (Adolph Coors) principal place of business was in

Colorado.  *Id.* at 621.  Adolph Coors was sued in several putative class action

lawsuits filed in D.C., Colorado, North Carolina and Ohio for unfair business

practices in marketing to minors in these states.  *Id.* at 619-621.  Colorado had the

most significant interest in determining coverage because the policy was negotiated there and the insured's principal place of business and headquarters was there. *Id.* The only apparent connection to D.C. was that one of the plaintiffs was a D.C. resident who filed his lawsuit against the insured in D.C. *Id.* This fact alone was insufficient to override the State of Colorado's interests. *Id.*

Here, the district court correctly found that the choice of law factors used in insurance coverage cases "overwhelmingly indicate" that the District's law applies. *Chicago Ins. Co. v. Paulson & Nace, PLLC*, --- F. Supp. 2d ----, 2014 WL 1392101 at * 7. As the Nace Defendants admitted in their Answer, Barry Nace and Paulson & Nace are citizens and residents of the District, which is also their principal place of business. (Complaint, ¶¶ 2, 4; Answer, ¶¶ 2, 4). The Nace Defendants also concede that the CIC policy was negotiated and delivered in the District. (Brief, p. 20, n. 6). The fact that the specific act of malpractice giving rise to this coverage dispute may have been committed in Virginia, and that the Nace Defendants do not exclusively practice in the District, does not alter the fact that the *principal* place of the risk insured under the CIC policy was the District.

The Nace Defendants mistakenly rely on case law analyzing which state's law governs the merits of various underlying torts for which coverage is sought, and not insurance coverage cases. *See, e.g., Dorothy K. Winston & Co. v. Town Heights Dev., Inc.*, 376 F. Supp. 1214 (D.D.C. 1974) (situs of real estate was

22

controlling contact in action by real estate against developer for her commission); *Stern v. Drew*, 285 F. 925 (D.C. 1922) (holding that the District's law applied to interpret terms of bailment contract for property maintained in the District). These cases simply do not apply in this insurance coverage action.

The Nace Defendants also misstate the holding in *Capitol Specialty Ins. Corp. v. Sanford Wittels & Heisler, LLP*, 793 F. Supp. 2d 399 (D.D.C. 2011). Contrary to the Nace Defendants' representation, *Capitol Specialty* did not hold that "legal malpractice insurance contracts should be interpreted and enforced pursuant to the law of the jurisdiction where the malpractice occurred." (Brief, pp. 18, 21). The court's brief choice of law analysis focused on the fact that the insured had cited to case law analyzing life insurance policies which suggested that the law of the state where the life insurance policy was delivered applied to the interpretation of the policy. 793 F. Supp. 2d at 407-08.

In addition to noting that this rule appeared limited to life insurance policies, the court also concluded that there was no conflict between the laws of the District (where the malpractice lawsuit against the insured was filed) and New York (where the policy was delivered) and that the District's law would therefore apply. *Id.* The court did not evaluate the *Eli Lilly* factors and certainly did not reject *Eli Lilly*'s holding that the principal location of the insured risk is the controlling factor for purposes of a liability policy. In fact, the court's application of the District's

23

law is consistent with *Eli Lilly* because although the insured was an entity organized under New York law, it "regularly transact[ed] business from its Washington, D.C. office." *Id.* at 402.

In addition to lacking precedential authority, the Nace Defendants' argument is a complete reversal of their position on this issue before another federal court. When CIC filed its original coverage action in Virginia federal court to ensure personal jurisdiction over Gilbert, the Nace Defendants moved to dismiss on the grounds that Virginia did not have personal jurisdiction over them. The Nace Defendants adamantly maintained before the Virginia court that the District's law should apply to determine coverage because the policy "is subject to Washington, D.C. law interpretation." (PSOF, ¶ 35). The Nace Defendants made numerous representations to the Virginia court to this effect:

> "The only issue before the Court … is the insurance contract, not the underlying tort claim. There are simply no connections to Virginia as between CIC, Paulson & Nace, Barry Nace and interpretation or enforcement of the insurance contract."

> "[T]he two counts in the present case arise out of the interpretation and enforcement of a Washington, D.C. insurance policy. The only parties to the contract are CIC and Paulson & Nace. CIC is an Illinois corporation and Paulson & Nace is a Washington, D.C. limited liability company. Barry Nace resides and works in Washington, D.C. Further, the negotiation for and execution of the Policy occurred in Washington, D.C. … None of the acts or omissions surrounding the Policy occurred [in Virginia]."

"[T]he issue in this case implicates Washington, D.C.'s significant interest in determining and applying its own insurance contract interpretation law."

"This case arises out of an insurance policy or contract, executed by an Illinois insurance company and a Washington, D.C. law firm."

"Neither Paulson & Nace nor Barry J. Nace is registered or licensed to do business in Virginia."

" … [A]ny performance or misrepresentation alleged in [CIC's Complaint] occurred in Washington, D.C."

"[I]t is inapposite to this case whether or not the Richmond City Circuit Court has personal jurisdiction over the Nace Defendants in the legal malpractice case due to their representation of Ms. Gilbert in the underlying medical malpractice case because the present case does not arise out of any of the Nace Defendants' contacts with Virginia."

"[N]either Paulson & Nace, PLLC, nor Barry J. Nace, had any regular court of conduct or business transaction in the Commonwealth of Virginia."

(PSOF, p. 9, ¶ 35; PSOF, Exh. V).

The Nace Defendants conveniently ignore their previous representations to the Virginia court.  However, having successfully avoided litigating the coverage issues in Virginia in large part by arguing that the District's law should apply to determine coverage, the Nace Defendants should not be allowed to take the exact opposite position in this Court because it now suits their purposes.

### C.    Even if Virginia law applies, § 38.2-2226 does not provide the Nace Defendants relief.

#### 1.    The Nace Defendants have no standing to seek protection under § 38.2-2226.

The Nace Defendants argue that this Court should apply Virginia Code § 38.2-2226 to protect Gilbert's rights because "this statute is designed to protect Virginia plaintiffs."   (Brief, pp. 1, 11, 15).   Significantly, however, claimant Gilbert did *not* appeal the district court's ruling in favor of CIC and therefore has no standing to argue for application of § 38.2-2226.   The Nace Defendants also have no standing to argue for application of this statute because it cannot be applied to create coverage in an action between an insurer (CIC) and its insureds (the Nace Defendants) as is the case here.

Despite the fact that Gilbert did not file a notice of appeal from the district court's order, Gilbert has filed a perfunctory Brief with this Court in which she requests that this Court grant the Nace defendants' request that the district court's order be reversed.   But as an appellee – not an appellant – Gilbert can only be heard in support of the district court's ruling.   *See Associated Third Class Mail Users v. U.S. Postal Service*, 662 F.2d 767, 770, 213 U.S. App. D.C. 252, 255 (C.A.D.C.  1980) ("a party may not challenge or seek to enlarge a judgment to which he did not himself object"); *Blackhurst v. Johnson* 72 F.2d 644, 649 (8th Cir. 1934) ("questions decided adversely to a party who has not appealed will not

26

be considered on appeal. Appellees can be heard only in support of the decree which was rendered."); *Reynolds Spring Co. v. L.A. Young Industries*, 101 F.2d 257, 262 (6th Cir. 1939) (an appellee, who has not filed a notice of appeal, may not attack the district court's order with the intent of enlarging his own rights); *U.S. v. $304,980.00 in U.S. Currency*, 732 F.3d 812, 818 (7th Cir. 2013) ("[a]n appellee who wants, not that the judgment of the district court be affirmed on an alternative ground, but that the judgment be changed…must file a cross-appeal.*"); Grimes v. District of Columbia*, 836 F.2d 647, 651, 266 U.S. App. D.C. 483, 487 (C.A.D.C. 1988) ("an appellee may not attack a district court order 'with a view either to enlarging his own rights thereunder or of lessening the right of his adversary'").

As the only appellants in this matter, the Nace Defendants are the only parties who have standing to argue that the district court's order be reversed. However, the Nace Defendants cannot rely upon § 38.2-2226 in doing so because an *insured* has no standing to rely upon § 38.2-2226 as a basis for obtaining coverage. *Great American Ins. Co. v. Gross*, 2008 WL 376263 at *10-11 (E.D. Va. Feb. 11, 2008) (refusing to apply § 38.2-2226 in a coverage action between insurer and insured because the statute has "no effect upon the contractual relations between the insured and the insurer."). As the insureds, the Nace Defendants have no standing to argue that § 38.2-2226 should apply to bar CIC from asserting its

coverage defenses vis-à-vis the Nace Defendants. Accordingly, this argument should be rejected outright.

Even if the Nace Defendants somehow had standing to argue for application of § 38.2-2226, this statute applies only if the claimant has sustained prejudice as the result of not having received notice of an insurer's coverage defense. *See Maxey v. Doe*, 225 S.E.2d 359, 361 (Va. 1976) (interpreting § 38.2-2226's predecessor statute as providing for waiver of coverage defenses "where the rights of a claimant who is a stranger to the insurance contract may be prejudiced."); *Vermont Mut. Ins. Co. v. Everette*, 875 F. Supp. 1181 (E.D. Va. 1995) ("failure to timely notify the injured third party results in a waiver of the breach defense, where such failure has prejudiced the claimant's rights."); *Gross*, 2008 WL 376263 at *11 (citing *Maxey v. Doe* and holding that prejudice to the claimant is required under § 38.2-2226).

Gilbert presented no evidence of prejudice to the district court. Although Gilbert's attorney (Aubrey Ford) submitted an affidavit confirming that Gilbert did not receive CIC's reservation of rights within 45 days of its issuance, conspicuously absent from this affidavit was any allegation or evidence of prejudice to Gilbert. (*See* Defendant Gilbert's Response to Nace Defendants' Memorandum of Points and Authorities in Support of Their Motion for Summary Judgment, Exh. B). Moreover, it is undisputed that Gilbert and her counsel were

28

aware of CIC's coverage defenses no later than September 2012, when CIC filed and served its first complaint for declaratory judgment on Gilbert. Still Gilbert did nothing. Instead, with full knowledge of CIC's coverage position, Gilbert chose to litigate her underlying legal malpractice lawsuit against the Attorney Defendants for a full year after that and proceeded to trial in late October 2013.

The purpose of the Virginia statute presumably is to provide the claimant with information as to potential coverage defenses so that the claimant can determine if it is worth the time and resources to proceed with her claims against the insured. Gilbert had this information more than one year before her legal malpractice lawsuit proceeded to trial. Gilbert could have, for example, requested a stay in the underlying lawsuit pending resolution of the coverage action. Gilbert did not do so. There is no prejudice to Gilbert.

## 2. Virginia Code § 38.2-2226 does not apply to CIC's "prior knowledge" coverage defense.

By its express terms, Virginia statute § 38.2-2226 requires notice to a claimant only when the insurer "discovers *a breach* of the terms or conditions of the insurance contract by the insured." The Nace Defendants repeatedly mischaracterize CIC's position to be that the Nace Defendants somehow "violated" or breached the policy by failing to notify CIC of the Gilbert claim before the policy was issued. However, CIC does not seek to avoid coverage on the grounds that the Nace Defendants failed to report Ms. Gilbert' claim in a timely manner. To

29

the contrary, there is no coverage because prior to inception of the policy, an insured had a reasonable basis to believe that a professional duty had been breached or that a claim would be made against them.  Whether the insured had "prior knowledge" of an error or potential claim when the policy was issued is not a promise or duty to be performed by the insured; rather, it is a fact that either existed or did not exist at the time the policy was issued.

The Nace Defendants characterize this as a "semantic difference without significance."  (Brief, p. 16).  On the contrary, courts consistently recognize the distinction between a promise or condition included in a contract that is capable of being breached versus a requirement or condition that must be met in order to trigger coverage in the first instance but is not capable of being breached.  *See, e.g.*, *Medhin v. Hailu*, 26 A.2d 307, 310 (App. D.C. 2011) ("A contract is breached if a party fails to perform when performance is due"); *McArthur v. State Farm Mut. Inc. Co.*, 274 P.3d 981, 989 (Utah 2012) (provision in underinsured motorist policy requiring that the limits of the tortfeasor's insurance must be exhausted before coverage was triggered was a condition precedent to coverage rather than a covenant capable of being breached); *McVicker v. Travelers Ins. Co.*, 785 A.2d 550, 554 (R.I. 2001) (requirement in uninsured motorist policy that the insured must prove that the third party tortfeasor is in fact an owner/operator of an insured hit and run vehicle is a condition precedent to recovery of UIM benefits not

capable of being breached); *Hart Construction Co. v. Am. Fam. Mut. Ins. Co.*, 514 N.W.2d 384, 389 (N.D. 1994) (describing policy's insuring agreement requirement that there must be a "suit" against the insured seeking "damages" resulting from an "occurrence" as conditions precedent to the insurer's duty to defend); *Wheeling Pittsburgh Corp. v. Am. Ins. Co.*, 2003 WL 23652106 at \*13 (W. Va. Cir. Ct. Oct. 18, 2003) (describing requirement in insuring agreement that property damage take place during policy period as a condition precedent that must be satisfied in order to trigger coverage). *Medhin v. Hailu*, 26 A.2d 307, 310 (App. D.C. 2011) ("A contract is breached if a party fails to perform when performance is due"); *Restatement (Second) of Contracts*, § 225 (1981) ("Non-occurrence of a condition is not a breach by a party unless he is under a duty that the condition occur"); 8 Catherine M.A. McCauliff, *Corbin on Contracts*, § 30.13 (Rev. ed. 1999) ("If [a] condition consists of a personal action, it may properly be said not to be performed; but non-performance is not a breach of contract unless the person promised to render the performance – to perform the condition.").

In addition, Virginia courts have specifically held that § 38.2-2226 does not apply when, as here, the insurer contends that a claim does not fall within the terms and provisions of coverage as set forth in the policy. For example, *Cheatham v. NGM Ins. Co.*, 2013 WL 509049 (E.D. Va. Feb. 11, 2013) held that this statute had "no application" to a coverage dispute involving whether or not the underlying

claims alleged an "occurrence" under the policy's insuring agreement. *Id.* at *3. The court reasoned that the insurer was not claiming that the insured breached the terms or conditions of the policy; rather, the pivotal issue was "whether the language of the policy covers the claims." *Id*. at *5. *See also Berry v. State Farm Mut. Auto. Ins. Co.*, 340 F. Supp. 228, 231 (D. Va. 1972) ("It should be sufficient to state that this statute has no application to a noncoverage situation. There was no *breach* of the insurance contract by the insured"); *Gordon v. Liberty Mut. Ins. Co.*, 675 F. Supp. 321, 323 (E.D. Va. 1987) (in analyzing § 38.2-2226, the court noted that the plaintiff failed "to distinguish appropriately between denial of coverage based on an alleged insured's breach and denial based on simple non-coverage under the terms of the policy *** [T]he estoppel principle cannot operate to prevent Liberty Mutual from showing that the policy, by its terms, simply does not cover Mr. Rossi under the circumstances of this case.").

Here, CIC's defense to coverage is that the "no prior knowledge" requirement (or condition precedent for coverage) set forth in the policy's insuring agreement has not been met. Although this "no prior knowledge" requirement could be characterized as a condition precedent to the trigger of coverage, it is not a condition capable of being breached by the action or inaction of an insured. Examples of conditions that can be breached are conditions requiring an insured *to provide* prompt notice of a claim, *to cooperate* in an insurer's investigation of a

claim, and *to appear* for an examination under oath or deposition.   In contrast, whether the "no prior knowledge" requirement is satisfied is based upon the facts that existed at the time the policy was issued, i.e., would an attorney having knowledge of the facts concerning the filing of two lawsuits and subsequent dismissals have a reasonable basis to believe that an error had been committed or that a claim might be made?  There is nothing an insured could perform or fail to perform in order to satisfy this requirement.  The facts known at the time the policy incepted would either cause a reasonable attorney to know that an error had been committed or they would not.[2]

The Nace Defendants do not cite a single case – nor is there any – in which a court applied § 38.2-2226 to a coverage defense based upon the "no prior knowledge" requirement in an insuring agreement.  The two cases cited by the Nace Defendants involve an insurer's argument that the insured breached an occurrence-based liability policy by failing to provide timely notice of a claim.

---

[2] The district court correctly determined that prior to issuance of the CIC policy, the Nace Defendants had knowledge of facts that would cause a reasonable attorney to know that a professional error had been committed and that, therefore, the insuring agreement had not been satisfied.  (Order, pp. 15-16).  Although the district court goes on to note that the Nace Defendants should have disclosed Gilbert's potential claim when it applied for insurance, the district court does not discuss or apply any notice provisions in the policy because CIC did not assert these claims (even though the facts may also support these claims).  In addition, although the Nace Defendants complain that CIC did not return their premiums "after it rescinded" the policy (Brief, p. 16), CIC has never rescinded or sought to rescind the policy.

*Gordon v. Liberty Mut. Ins. Co.*, 675 F. Supp. 321, 322-23 (E.D.Va. 1987) (alleged breach of policy covering leased vehicle by permitting use by non-listed driver); *Liberty Mut. Ins. Co. v. Safeco Ins. Co. of America*, 288 S.E.2d 469, 473-474 (Va. 1982) (alleged breach of duty to provide prompt notice of claims). These cases do not warrant application of § 38.2-2226 here because CIC has never argued it is entitled to deny coverage based on the *breach* of any notice provision in the CIC policy.

## II. THERE IS NO COVERAGE FOR GILBERT'S LAWSUIT BECAUSE THE "NO PRIOR KNOWLEDGE" REQUIREMENT IN THE POLICY'S INSURING AGREEMENT HAS NOT BEEN MET.

### A. The Nace Defendants have the burden of proving that the requirements for coverage in the insuring agreement have been met.

It is well established that an insured seeking coverage under an insurance policy has the burden of establishing that the claim falls within the policy's insuring agreement. *Evans v. Med. Inter-Ins. Exchange*, 856 A.2d 609, 613 (D.C. 2004); *Council For Responsible Nutrition v. Hartford Cas. Ins. Co.*, 2007 WL 2020093 at *4 (D.D.C. July 12, 2007) ("insured bears the burden of showing that the underlying complaint comes within the policy's grant of coverage"). Accordingly, the Nace Defendants have the burden of proving that the "no prior knowledge" requirement in the policy's insuring agreement has been satisfied in order to obtain coverage. *Capitol Specialty*, 793 F. Supp. 2d at 410-411. This

situation is analogous to an "occurrence-based" liability policy that provides coverage only for "bodily injury" or "property damage" caused by an "occurrence" that takes place during the policy period.  Under both types of policies, it is the insured's burden to establish that the facts and circumstances of the claim for which the insured seeks coverage fall within the scope of the insuring agreement.  Here, the Nace Defendants cannot meet this burden because the undisputed facts and controlling case law establish as a matter of law that the "no prior knowledge" requirement has not been met.  CIC therefore has no obligation to provide coverage for the Gilbert lawsuit.

### B.     Prior to inception of the CIC policy, the Nace Defendants had a reasonable basis to believe that they breached a professional duty.

Whether or not an insured had a reasonable basis to believe that a professional error had been committed is analyzed under an objective standard. *Capitol Specialty*, 793 F. Supp. 2d at 411.  Here, prior to inception of the CIC policy, the Nace Defendants were aware that two separate medical malpractice lawsuits they had filed on Gilbert's behalf had been dismissed – the first because they failed to comply with a procedural requirement established by the Virginia legislature (Va. Code § 8.01-8), and the second, which was filed to correct the error in the first complaint, was filed after the statute of limitations had expired.

Although the Nace Defendants maintain that their violation of Va. Code §8.01-8 was a "technical misnomer," it is clear that the Virginia legislature that

enacted the statute and the Virginia court that dismissed the first lawsuit disagreed. More saliently, it is the dismissal of two separate lawsuits that would put a reasonable attorney on notice of the fact that an error had been committed, regardless of whether the Nace Defendants believed the dismissals eventually might be reversed. The district court correctly determined on these facts that the Nace Defendants had a "reasonable basis to believe" that they had "breached a professional duty" to Gilbert before the CIC policy incepted.

*Capitol Specialty*, *supra*, is on point. Capitol Specialty issued a liability insurance policy to the insured law firm, Sanford Wittels & Heisler effective December 10, 2007. 793 F. Supp. 2d at 402. The policy was renewed thereafter on an annual basis. *Id.* The policies included the following requirements for coverage:

> (b) *prior to the inception date of the first policy* issued by the Company if continuously renewed, no Insured had any basis (1) to believe that any Insured had breached a professional duty; or (2) to foresee that any such act or omission or Related Act or Omission might reasonably be expected to be the basis of a Claim against any Insured; and

*Id.* at 408.

On October 5, 2005, the insured law firm filed a racial discrimination suit on behalf of its individual clients and a putative class of similarly situated employees against the Department of Commerce ("DOC"). *Id.* at 402. The insured failed to comply with local rules which required the insured to file a complaint for class

36

certification within 90 days of filing the original complaint.  *Id.*  Accordingly, on March 17, 2006, DOC moved to strike the class claims on the ground that the clients had missed the filing deadline for class certification.  *Id.*

On June 23, 2006, the insured filed an amended complaint and a motion to extend the class certification deadline.  *Id.*  The DOC renewed its motion to strike the class claims.  On September 7, 2007, the underlying court granted the DOC's motion and refused to reconsider the order, "noting that defendants did not rely on their reading of the local rule 'until after they realized they had already missed the filing deadline by more than two and a half months' and that instead, they 'hoped, through the filing of an amended complaint, to resurrect their ability to file a motion that *they already knew was already several months out of time.*'"  *Id.* at 403. The underlying court also observed that defendants' "post hoc rationalizations" for missing the certification deadline did little to conceal the fact that defendants "ha[d] no excuse beyond attorney mistake for their failure to file a timely motion for class certification."  *Id.*  Following this ruling, the clients retained new counsel and pursued their individual claims against the DOC.  *Id.*

On January 21, 2010, the clients filed a legal malpractice action against the law firm.  *Id.* at 404.  On February 19, 2010, the law firm notified Capitol of the lawsuit.  *Id.*

Capitol contended that the claim was not covered because the insured had notice of a potential claim as early as March 2006 (prior to inception of the policy) when the DOC first moved to strike the class claims on the grounds that the claimants had missed a filing deadline. *Id.* at 405. According to Capitol, that knowledge was reinforced in February, 2007 when the class claim was dismissed and again in September, 2007 when the underlying court rejected the reconsideration efforts. *Id.*

The insured argued that their clients' malpractice action was not reasonably foreseeable. *Id.* at 410. The insured emphasized that the clients had "expressed their understanding that the Court's dismissal of the class claims could be appealed at a later time, and the clients further stated their intent to proceed with the individual claims and appeal the Court's decision to strike the class claims at the end of litigation." *Id.* at 411.

The court rejected the insureds' argument and concluded that the facts established "as a matter of law" that prior to inception of the policy the insureds had a basis to "believe that any Insured had breached a professional duty," or to "foresee that any such act or omission ... might reasonably be expected to be the basis of a Claim against the Insured." *Id.* In so holding, the court observed that missing a filing deadline resulting in the dismissal of the class action claim could "easily qualify as a breach of a professional duty." *Id.* at 410 (citing *See In re*

*Belmar*, 319 B.R. 748, 755 (Bankr. D.D.C. 2004) ("[T]here is no genuine issue that the defendants breached that standard of care by failing to timely file an opposition or seek an extension of time in which to file such an opposition.").

The court soundly rejected the insured's arguments that they did not subjectively believe an error had been committed or that a claim would be made, noting that the correct standard is an "objective, reasonable attorney" standard – not "whether the lawyer in fact had a subjective belief that a malpractice action was probable." *Id.* at 411. *See also Ross v. Continental Cas. Co.*, 420 B.R. 43 (D.D.C. 2009) (a law firm's failure to file a timely answer resulting in a default judgment could reasonably be expected to form the basis for a malpractice claim); *Cameron v. Washington Metro. Area Transit Auth.*, 649 A.2d 291, 294 (D.C. 1994) (finding an attorney "has a duty to pay attention to filing deadlines...."); *O'Neil v. Bergan*, 452 A.2d 337, 341-43 (D.C. 1982) (holding that "allowing the statute of limitations to run on the client's claim" is an example of obvious malpractice that does not require expert testimony to establish a standard of care).

Similarly, in *Bryan Bros. Inc. v. Continental Cas. Co.*, 660 F.3d 827, 830-31 (4th Cir. 2011) (applying Virginia law), the court concluded that the insured's prior knowledge of an act or omission that could reasonably be expected to be the basis of a claim precluded coverage under the policy. The insured was a professional accounting firm that was sued for claims relating to embezzlement by

an insured employee. *Id.* In the insuring agreement, Continental Casualty agreed to cover the insured's "liability on claims made during the policy period '*provided that* ... prior to the effective date of this policy, none of you had a basis to believe that any such act or omission, or interrelated act or omission, might reasonably be expected to be the basis of a claim.'" *Id.* (emphasis in original).

The court held that because the insured knew of at least some of the thefts giving rise to the embezzlement claims prior to issuance of the professional liability policy, as a matter of law, the insured had a reasonable basis to believe that a claim might be made by the insured's clients. *Id.* The court aptly explained that its holding "melds with the concept of fortuity, a fundamental premise of insurance law." *Id.* at 831. "Insurers do not usually contract to cover preexisting risks and liabilities known by the insured." *Id.* "[T]he prior knowledge provision essentially makes fortuity a condition of coverage" and "indicates in clear and unambiguous language Continental Casualty Company's unwillingness to cover liability arising from prior acts or omissions that any insured might reasonably expect to result in a claim." *Id.*

Courts across the country applying this objective standard consistently hold that an insured's subjective belief that he did not commit a professional error or that the error might be remedied on appeal does not satisfy the "no prior knowledge" requirement for coverage in a claims-made policy. *See Koransky,*

*Bouwer & Poracky, P.C. v. Bar Plan Mut. Ins. Co.*, 712 F.3d 336 (7th Cir. 2013) (holding as a matter of law that a reasonable attorney knew or should have known that his inadvertent misfiling of an executed sales contract might give rise to a claim, regardless of whether the insure believed a court would eventually rule in favor of his client); *Wittner, Poger, Rosenblum & Spewak, P.C. v. Bar Plan Mut. Ins. Co.*, 969 S.W.2d 749, 754 (Mo. 1998) (insured's subjective belief that default judgment eventually would be vacated and client would not file a claim did not preclude finding that insured had a reasonable basis to believe he had committed an error); *Lewis v. St. Paul Fire and Marine Ins. Co.,* 452 N.W.2d 386, 389 (Iowa 1990) (rejecting argument that attorney could not reasonably believe a claim might be pursued against him based upon dismissal of client's workers compensation claim until commissioner rendered final ruling that claim could not be reinstated); *General Ins. Co. of America v. Boyd*, 2002 WL 1610948 (S.D. Ind. July 9, 2002) (insured's good faith subjective belief that default judgment against his client was in error and would be reversed on appeal did not preclude finding that a malpractice claim was reasonably foreseeable); *Ross*, 420 B.R. at 55 (no malpractice coverage available to an attorney for a suit stemming from the attorney's failure to file an answer which resulted in a default being entered; the court stated, "[i]n establishing prior knowledge, there is no requirement that the client complain ahead of time or indicate that it will file a claim against the

41

insured"); *Worth v. Tamarack Am., a Div. of Great Am. Ins. Co.*, 47 F. Supp. 2d 1087, 1099-1100 (S.D. Ind. 1999), *aff'd* 2000 WL 101227 (7th Cir. Jan. 26, 2000) (insured's subjective belief that client would never be able to prove malpractice was irrelevant when the facts provided insured with a reasonable basis to believe that he breached a professional duty); *Mt. Airy Ins. Co. v. Thomas*, 954 F. Supp. 1073, 1080 (W.D. Pa. 1997) (dispute over whether attorney believed that client would actually pursue a claim is not relevant).

The Nace Defendants attempt to distinguish this overwhelming body of case law by arguing that their professional errors were different from the errors in these cases, which all involved the attorney "missing a deadline." (Brief, p. 26). On the contrary, none of these cases limit their holdings to situations involving a missed deadline. The critical fact in each of these cases is that as a result of the attorney's conduct, whether it was the failure to file a pleading in a timely manner, the failure to properly record an executed sales contract or the embezzlement of client funds, the client's claims or legal rights were either dismissed or otherwise negatively impacted and a reasonable attorney would understand that a professional error had been made.

This is exactly what happened here. On February 26, 2007 – five months before the first CIC policy was issued to the Nace Defendants – the court dismissed Gilbert's first medical malpractice lawsuit because it had been filed in

the name of the wrong party.  On June 18, 2007 – just one month before the first CIC policy was issued – the court dismissed the second malpractice lawsuit filed by the Nace Defendants to correct the pleading error in the first malpractice lawsuit.  The second lawsuit was dismissed with prejudice because it was filed after the statute of limitations had expired.  All of this happened before CIC issued its policy to Paulson & Nace on July 24, 2007.

Even adopting the Nace Defendants' narrow rule that summary judgment is proper only when the professional error involves "missing a deadline," CIC is entitled to summary judgment.  The Nace Defendants' failure to comply with Virginia's procedural statute resulted in their failure to file a proper complaint within the statute of limitations – in other words, missing a deadline.

In summary, the district court correctly determined as a matter of law that no reasonable attorney could fail to understand based on the circumstances that existed prior to CIC's first policy being issued on July 24, 2007 that professional errors had been committed or that a legal malpractice claim might be asserted against them as a result of these errors.  Whether or not these errors ultimately could be "fixed" (which they were not) or the Nace Defendants subjectively believed that Gilbert would prevail on such a claim does not alter this conclusion.  Because the requirements for coverage in the policy's insuring agreement have not

been met as a matter of law, CIC has no obligation to provide coverage for the Gilbert Lawsuit.

### C.   CIC is not required to provide expert testimony in order to prevail on its coverage defense.

The Nace Defendants erroneously argue that CIC was required to present expert testimony to support its coverage position and that without this testimony, the only evidence properly before the district court was Barry Nace's own testimony that he did not think an error had been committed.  In addition to the fact that Mr. Nace's own subjective belief is entirely irrelevant, there is no requirement that expert testimony be provided on this issue.

Courts in the District and across the nation routinely determine as a matter of law – without relying on expert testimony – whether or not an insured had a reasonable basis to believe that it had breached a professional duty or to reasonably foresee that a claim might be made against it.  *See, e.g., Capitol Specialty*, 793 F. Supp. 2d at 411 (holding as a matter of law that the insured failed to establish that the "no prior knowledge" requirement had been satisfied without reference to the need for expert testimony); *Ross*, 420 B.R. at 55 (holding as a matter of law that the insured had reason to know a claim might be asserted against him with no expert testimony required on issue); *Bryan Bros. Inc.*, 660 F.3d at 830-31 (holding as a matter of law that the insured had a reasonable basis to believe his conduct could result in a claim with no expert testimony required on issue); *Worth*, 47

44

F.Supp.2d at 1095 (S.D. Ind. 1999), *aff'd* 2000 WL 101227 (holding as a matter of law that the insured had a reasonable basis to believe a professional duty had been breached with no expert testimony required on issued); *Koransky, Bouwer & Poracky, P.C.*, 712 F.3d at 343(holding as a matter of law that the insured had knowledge that a claim might be asserted against it with no expert testimony required on issued); *Home Ins. Co. v. Powell*, 1997 WL 370109 at *5 (E.D. Pa. June 13, 1997) (holding as a matter of law that an attorney who failed to "follow local rules of court procedure" requiring submission of a memorandum with filing had a reasonable basis to believe he had breached a professional duty with no expert testimony required); *Darwin Nat. Assur. Co. v. Hellyer*, 2011 WL 2259801, *3-4 (N.D. Ill. June 7, 2011) (holding as a matter of law that a reasonable attorney would have understood that a claim might be made with no expert testimony required).

Moreover, Federal Rule of Evidence 702 provides that expert testimony is admissible only to help the trier of fact "understand the evidence or to determine a fact issue." *See, e.g., U.S. ex rel. Mossey v. Pal-Tech, Inc.*, 231 F. Supp. 2d 94, 98 (D.D.C. 2002).  "It is established, however, that expert testimony consisting of *legal conclusions* will not be permitted because such testimony merely states what result should be reached, thereby improperly influencing the decisions of the trier of fact and impinging upon the responsibilities of the court." *Id.* (emphasis added).

Whether or not a reasonable attorney had a basis to know that a professional error had been committed is a legal question for the Court to decide. *See Westport Ins. Corp. v. Lilley*, 292 F. Supp. 2d 165, 169-170 (D. Me. 2003) (granting motion to strike insured's "expert testimony from the summary judgment record on the ground that it is offered on a question of law and is immaterial" as to whether or not the insured could have reasonably foreseen that a claim might be made).

The Nace Defendants do not cite a single case in the District (or Virginia for that matter) holding that expert testimony is required in a coverage action like this one. Instead, the Nace Defendants misleadingly cite to several cases holding that a plaintiff who asserts a legal malpractice claim against an attorney is required to support this claim with expert testimony that the attorney deviated from the standard of care. (Brief, pp. 13, 24-25). None of these cases involved the separate and distinct issue of whether or not insurance coverage exists for a malpractice claim, let alone whether the "no prior knowledge" requirement has been satisfied based on facts like those known to the Nace Defendants when they applied for insurance.

Even if it were necessary or appropriate to present expert testimony, which it is not, it is the Nace Defendants' burden to do so, and not CIC's burden. As previously stated, the Nace Defendants bear the burden of establishing that the "no prior knowledge" requirement for coverage in the CIC policy has been met. *See*

46

*Council For Responsible Nutrition*, 2007 WL 2020093 at *4 ("insured bears the burden of showing that the underlying complaint comes within the policy's grant of coverage").  The Nace Defendants have failed to do so, stating only that it is *Mr. Nace's subjective opinion* that the failure to comply with the Virginia statute in filing the first medical malpractice lawsuit and then filing the second lawsuit after the statute of limitations expired did not qualify as professional errors.

Mr. Nace, as a party to this lawsuit, certainly does not qualify as an independent expert witness, nor was he ever identified by the Nace Defendants in their disclosures as an expert witness.  Indeed, Mr. Nace acknowledged in his deposition that because he was not admitted to practice in Virginia and no expert on Virginia law, he eventually consulted with a Virginia lawyer (whom Mr. Nace considered an expert on Virginia law) about whether the trial court's dismissal of the first lawsuit would be upheld on appeal.  This Virginia lawyer advised Mr. Nace that he thought the appeal would be unsuccessful.  (Nace Defendants' Opposition to CIC's Motion for Summary Judgment, Exh. 2, pp. 57-58).  Mr. Nace's own testimony, therefore, supports the conclusion that an objective, reasonable attorney would have understood that a professional error had been committed prior to inception of the CIC policy.

The Nace Defendants misleadingly cite to four Virginia cases allegedly supporting the notion that attorneys routinely make the same mistake they did in

failing to comply with Virginia Code § 8.01-8 but the case is not dismissed. (Brief, p. 26). In these cases, however, there was no issue before the court as to whether the plaintiff's lawsuit should be dismissed for failure to comply with § 8.01-8. It appears that, for whatever reason, the defendants in those cases did not raise this issue as a defense. This certainly does not mean that failure to comply with the statute is not a professional error. Whether or not an error has been committed is not determined by whether or not it is commonly made or the opposing side catches the error.

In summary, applying an objective standard as this Court must do, the undisputed facts establish as a matter of law that a reasonable attorney would have understood a professional error had been committed when the two separate lawsuits it filed were dismissed for, one, failure to comply with the controlling Virginia statutes, and, two, failure to comply with the statute of limitations. There is no coverage under the CIC policy for the Gilbert Lawsuit.

## III. THE NACE DEFENDANTS' COMMON LAW WAIVER ARGUMENT FAILS AS A MATTER OF LAW.

Finally, the Nace Defendants seek to create coverage where none exists under the terms of the CIC policy by arguing that CIC waived the right to assert its "prior knowledge" defense based on the timing of its reservation of rights letters. Although the Nace Defendants also argued before the district court that CIC should

48

be estopped from asserting this defense, they have abandoned this argument on appeal and so CIC will not address it here.

As to waiver, the Nace Defendants argue that CIC's issuance of a reservation of rights in January 2012 asserting the "prior knowledge" coverage defense was "too late", even though Gilbert still had not yet asserted an actual claim or filed a lawsuit, and even though it is undisputed that CIC had no actual knowledge of facts supporting this coverage defense until late 2011. The Nace Defendants mistakenly contend that CIC should have issued this reservation in May of 2009, when Mr. Nace reported Gilbert's potential claim to CIC, or at the latest in March 2010, when Mr. Nace provided CIC some of the pleadings and appellate briefs from the underlying lawsuits. The district court correctly determined these arguments fail to establish waiver (an *intentional* relinquishment of a *known* right) as a matter of law. *See Zuckerman Spaeder, LLP v. Auffenberg*, 646 F.3d 919,922 (App. D.C. 2011); *Diamond Service Co., Inc. v. Utica Mut. Ins. Co.*, 476 A.2d 648, 656-57 (App. D.C. 1984).

The Nace Defendants concede that CIC never affirmatively represented to them that CIC would provide unconditional coverage for Gilbert's potential claim or claim. Moreover, the undisputed facts establish that it was not until late November 2011 that CIC discovered the professional errors allegedly committed by the Nace Defendants took place in 2006 and 2007, prior to the inception of the

policy, and not in 2008 as the Nace Defendants represented in writing to CIC when they reported Gilbert's potential claim.  Upon discovery of the true facts, CIC promptly issued a reservation of rights on January 13, 2012 identifying the "no prior knowledge" coverage defense.  Then, when Ms. Gilbert filed her lawsuit in March of 2012, CIC timely issued another reservation of rights letter specifically advising that CIC would provide a defense to the lawsuit subject to its right to deny coverage based on the fact that the "no prior knowledge" requirement for coverage had not been met.

The Nace Defendants' misleading statement that CIC "had full notice" in March 2010 that the true date of their professional error was prior to inception of the CIC policy is, not surprisingly, unsupported by any citation to the record. (Brief, p. 30).  The Nace Defendants have never presented any evidence to refute the testimony of CIC representatives that they relied on Mr. Nace's representation as to the date of the error and did not finally discover the true date of the error until November 2011, at which time CIC promptly issued its reservation of rights. (PASOF, ¶¶ 39-42).

Although the Nace Defendants claim that CIC somehow had a duty to investigate the veracity of Mr. Nace's representation concerning the date of the error, there is no legal support for this proposition.  On the contrary, as the district court correctly observed, until Gilbert filed her lawsuit in March 2012, CIC had no

duty under D.C. law to issue any reservation of rights because it had not yet "undertaken the defense" of the Nace Defendants "against a litigious assertion of an unprotected liability." *See Cincinnati Ins. Co. v. All Plumbing, Inc. Serv., Parts Installation*, 2013 WL 5665195 at *4 (D.D.C. Oct. 18, 2013) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh v. Aetna Cas. & Sur. Co.*, 384 F.2d 316, 318 (D.C. Cir. 1967).

The Nace Defendants cite only to *In re: Cutty's Gurnee, Inc.*, 133 B.R. 934 (Bankr. N.D. Ill. 1991) for the notion that an "insurer is not entitled to bury its head in the sand or look the other way when it had in its possession the very document creating such interest and knowledge of the circumstances…".  What the Nace Defendants fail to explain is that this case involved the duty of a *title insurer* to conduct its due diligence for purposes of determining validity of title to certain land trusts.  This case has absolutely no application here.

There also is no evidence that the Nace Defendants sustained actual prejudice by the timing of CIC's reservation of rights.  For example, although Mr. Nace submitted an affidavit in support of the Nace Defendants' Motion for Summary Judgment, *nowhere* in his affidavit does Mr. Nace claim that the Nace Defendants sustained any prejudice, let alone what that prejudice might be. (PASOF, ¶ 68).

51

However, in their Opposition to CIC's Motion for Summary Judgment filed with the district court, the Nace Defendants' counsel speculated that if they had known of CIC's reservation of rights sooner perhaps they could have filed their own declaratory judgment lawsuit and maybe would not have had to sit through a trial in the underlying lawsuit.  (*See* Nace Defendants' Opposition to Plaintiff's Motion for Summary Judgment, pp. 27-28).   The Nace Defendants further speculated that maybe they could have convinced Gilbert not to file her lawsuit against them or they could have hired their own counsel and somehow "resolved" the lawsuit or claim short of having to undergo a trial.  (PASOF, pp. 24-25, ¶¶ 69-76).  Not only are these claims of prejudice pure speculation but they ring hollow given that even after CIC sent its reservation of rights letters in January of 2012, the Nace Defendants still did not hire their own coverage counsel or file a declaratory judgment action.  In fact, they did not retain coverage counsel until after CIC filed its declaratory judgment action in September 2012.  Then, the Nace Defendants moved to dismiss that lawsuit and, when it was dismissed, they did not file their own coverage lawsuit.  It was CIC who filed this lawsuit to determine coverage.

As to the Nace Defendants' claim that they could have resolved Gilbert's claim without having to go to trial if they had known of CIC's coverage defenses sooner, Mr. Nace's own deposition testimony contradicts this argument.  Mr. Nace

conceded in his deposition that even after Mr. Ford assumed representation of Gilbert in the underlying medical malpractice lawsuit in January 2011 (and one year before Ms. Gilbert actually asserted a claim against the Nace Defendants and filed her lawsuit), Mr. Nace would not have attempted to engage in any settlement discussions with Mr. Ford at that time if he had been aware of coverage defenses. (PASOF, p. 24-25, ¶¶ 70-72). As Mr. Nace explained, "at that point in time, since [Mr. Ford] had the case, he's the adversary, and if I'm going to be sued, I don't think it would be wise for me to be talking to him [about settlement] at that point." (PASOF, Exh. Z, p. 123, line 6 through p. 124, line 9).

Significantly, the Nace Defendants do not claim that their defense of Gilbert's lawsuit was detrimentally impacted in any manner by the timing of CIC's reservation of rights, nor do they have any complaints about the quality of representation provided by the defense counsel (the Jordan Coyne law firm) appointed to defend them in Gilbert's lawsuit. This is the type of prejudice considered by courts in determining whether waiver or estoppel should preclude an insurer from asserting coverage defenses.

For example, the court in *Capitol Specialty*, 793 F.Supp.2d at 413, rejected outright a prejudice argument made by the insureds that is nearly identical to the claim being made by the Nace Defendants. In rejecting the argument that the insureds were prejudiced in the defense of the malpractice lawsuit against them by

53

the insurer's conduct in undertaking their defense and delaying in issuing a reservation of rights, the court held:

> The fourth point asserts prejudice [in their defense of the Malpractice Action against them], but defendants fail to demonstrate any evidence of actual prejudice in the handling of their case beyond vague and conclusory allegations of such prejudice. Defendants allege that they incurred legal fees and costs, and were deprived of their preferred counsel. <u>However, they do not allege or point to any evidence that the representation provided by [their insurer] hindered the defense of their claim or that the counsel was inadequate or ineffective</u>. (Emphasis added).

*Id.* The court also noted that the insureds never objected to the counsel selected by their insurer. *Id.* Under these circumstances, the insurer was not precluded from asserting its coverage defenses. *Id.* (citing *Athridge v. Aetna*, 510 F. Supp. 2d 1, 8 (D.D.C. 2007) ("Plaintiffs' contentions of ways in which prejudice could have been created cannot overcome their inability to show any prejudice was created …"). *Accord Diamond Service*, 476 A.2d at 656-57 (rejecting as a matter of law the insured's vague argument that it was misled by its insurer into believing no coverage defenses would be asserted when the insurer filed an answer to the lawsuit on its insured's behalf and answered interrogatories before finally advising the insured it reserved its right to deny coverage).

The prejudice claim made by the Nace Defendants is even weaker than those asserted in *Capitol Specialty* and *Diamond Service* because CIC's conduct in not issuing a reservation of rights letter took place while CIC was investigating only a

*potential* claim against the insureds and while CIC had no actual knowledge of any coverage defenses.  The D.C. courts in *Capitol Specialty* and *Diamond Service* found no prejudice and no estoppel as a matter of law even when the insurer delayed in issuing a reservation of rights after a lawsuit had been served on the insured and the insurer was aware of a potential coverage defense.  *See, e.g., Diamond Service*, 476 A.2d at 654-56 (no prejudice even though insurer delayed in notifying insured of coverage defense for nine months after insurer learned of potential defense).

In summary, CIC's reservation of rights letter, which was issued before Gilbert even filed her lawsuit, was timely.  The Nace Defendants also sustained no prejudice as a result of the timing of CIC's reservation of rights letter.  This Court should reject the Nace Defendants' waiver argument as a matter of law.

## CONCLUSION

CIC respectfully requests that this Court affirm the district court's grant of summary judgment in CIC's favor and its denial of the Nace Defendants' motion for summary judgment.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Fed. R. App. P. 34(a), CIC requests that oral argument be permitted in light of the multiple issues involved and so that it has the opportunity

to address any new authority or arguments made in the Nace Defendants' reply brief.

Respectfully submitted


/s/ Paulette S. Sarp

Paulette S. Sarp (#54715)
HINSHAW & CULBERTSON LLP
333 South Seventh Street
Suite 2000
Minneapolis, MN 55402
Tel: 612-333-3434 / Fax: 612-334-8888

David Hudgins (#32072)
dhudgins@hudginslawfirm.com
Hudgins Law Firm
515 King Street, Suite 400
Alexandria, VA  22314
703-739-3300

Attorneys for Appellee Chicago
Insurance Company

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, according to the word processing software employed by my firm, it contains 13,681 words.

/s/ Paulette S. Sarp
*Paulette S. Sarp, #54715*

## <u>CERTIFICATE OF SERVICE</u>

I, Paulette S. Sarp, hereby certify that two true and accurate copies of the foregoing brief were served upon counsel for the Appellants and other Appellees by first class mail on this 15th day of October, 2014, as follows:

Stephen A. Horvath, Esq.
Bancroft, McGavin, Horvath & Judkins, P.C.
3920 University Drive
Fairfax, Virginia  22030

*Attorneys for Appellants*


Carla D. Brown
Charlson, Bredehoft & Cohen
11260 Roger Bacon Drive, Suite 201
Reston, VA  20190

*Attorneys for Appellee Sarah Gilbert*


Gabriel Amin Assaad
1425 K Street, NW, Suite 350
Washington, DC  20005

*Appellee Gabriel Amin Assaad*

                                        /s/ Paulette S. Sarp
                                        *Paulette S. Sarp, #54715*